IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND STATE INSURANCE COMPANY, | No. C 11-5193 CW |
| Plaintiff, | ORDER GRANTING IN PART, AND DENYING IN PART, DIAMOND'S FIRST MOTION TO DISMISS AND TO STRIKE (Docket No. 32), GRANTING MARIN MOUNTAIN BIKES LEAVE TO FILE ITS PROPOSED AMENDED AFFIRMATIVE DEFENSES, DEEMING REPLY BRIEF A MOTION TO STRIKE THE AMENDED AFFIRMATIVE DEFENSES, GRANTING DIAMOND'S SECOND MOTION TO STRIKE AND DISMISS (Docket No. 36), AND RESETTING DEADLINE TO HEAR CASE DISPOSITIVE MOTIONS |
| v. | |
| MARIN MOUNTAIN BIKES, INC.; and ATB SALES LIMITED, | |
| Defendants. | |
| ════════════════════════════/ | |
| AND ALL RELATED COUNTERCLAIMS | |
| ════════════════════════════/ | |

Plaintiff Diamond State Insurance Company first moves to strike Defendant Marin Mountain Bikes, Inc.'s affirmative defenses and to dismiss Marin's counterclaims or require a more definite statement. Marin opposes Diamond's first motion to the extent that it seeks to prevent Marin from amending its affirmative defenses and counterclaims, but does not otherwise oppose the motion. In a second motion, Diamond also moves to strike or dismiss Marin's first amended counterclaims (1ACC). Marin opposes

Diamond's second motion.  Having considered the papers filed by the parties on both motions and the parties' arguments at the hearing on the second motion, the Court GRANTS Diamond's first motion in part and DENIES it in part, and GRANTS Diamond's second motion.

BACKGROUND

The following facts are taken from Marin's 1ACC and from certain other documents of which the Court takes judicial notice.[1]

At all times relevant to this action, Diamond provided liability insurance to Marin, which designs and makes bicycles.

---

[1] With each of its motions, Diamond has filed a request for judicial notice.  In the first request for judicial notice (1RJN), Diamond seeks judicial notice of five exhibits.  In the second request for judicial notice (2RJN), Diamond seeks judicial notice of ten exhibits, the first five of which are identical to the five exhibits attached to the 1RJN.  Because the 2RJN encompasses the 1RJN, the Court will address the 2RJN only.

In the 2RJN, Diamond requests that the Court take judicial notice of various documents filed in this action and in other related actions filed in the Northern District of California and in the United Kingdom.  Marin opposes the request, arguing that Diamond improperly asks the Court to take judicial notice of the facts asserted in the documents and not simply of the fact that these documents were filed.

Exhibits A, B, C, D, F, G and H to the 2RJN are documents that the parties have filed in the instant case.  These documents are part of the record of the instant case and, as such, judicial notice is not required.

Exhibits E, I and J consist of documents filed in other cases.  The Court takes judicial notice of the existence of these documents, as well as of other documents filed in the docket of ATB Sales Ltd. v. Marin Mtn. Bikes, Inc., Case No. 11-4755 (N.D. Cal.), but declines to take judicial notice of the truth of the matters asserted in these documents.  See, e.g., McMunigal v. Bloch, 2010 U.S. Dist. LEXIS 136086, *2 n.1 (N.D. Cal.) (granting judicial notice of documents filed in another lawsuit for purposes of noticing the existence of the lawsuit, claims made in the lawsuit, and that various documents were filed, but not for the truth of the matters asserted therein).

1ACC ¶¶ 1-2.  The parties agree that the insurance policy states in part, at Section 1, Coverage A for bodily injury and property damage liability,

   1. Insuring Agreement

       a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

       b.   This insurance applies to "bodily injury" . . . only if:

          (1)  The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

          (2)  The "bodily injury" . . . occurs during the policy period. . .

1ACC ¶ 11; Compl. ¶ 8; Answer ¶ 8.  In the 1ACC, Marin alleges that the above language appeared on the first page of the insuring agreement.  1ACC ¶ 34.  The parties also agree that the following definitions are contained in the policy:

       3. "Bodily injury" means bodily injury, sickness or disease sustained by any person . . .

       4. "Coverage territory" means:

       a.   The United States of America (including its territories and possessions), Puerto Rico and Canada;

       b.   International waters or airspace, provided that the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

       c.   All parts of the world if:

          (1)  The injury or damage arises out of:

United States District Court
For the Northern District of California

        (a)  Goods or products made or sold by you in the territory described in a. above; or

        (b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

        (2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

. . .

13. "Occurrence" means an accident . . .

1ACC ¶ 11; Compl. ¶ 8; Answer ¶ 8.[2]  "Suit" is also defined as "a civil proceeding in which damages because of 'bodily injury' . . . are alleged."  1ACC ¶ 11.  In the 1ACC, Marin alleges that section c(2) of the definition of coverage territory appears on the eleventh page of the insuring policy.  Id. at ¶ 34.

Marin sells bicycles to ATB Sales Limited (ATB), a company that distributes Marin's bicycles in the United Kingdom only.  Id. at ¶¶ 1, 3.  "Diamond issued an 'Additional Insured-Vendors' endorsement to the Policy naming ATB as an additional insured under the Policy and promising to provide liability coverage to ATB 'with respect to liability arising out of your operations or premises owned by or rented to you.'"  1ACC ¶ 3.  See also id. at

---

[2] Diamond's complaint and Marin's answer contain more complete policy language than the 1ACC, from which certain words appear to have been removed for the sake of brevity.  Cf. 1ACC ¶ 11 with Compl. ¶ 8 and Answer ¶ 8.  The Court recites the longer policy language here for ease of reading only.  Any differences between the language in the complaint and answer and the 1ACC are not material to the outcome of the instant motions.  Further, the longer policy language is subject to judicial notice, because it is not subject to reasonable dispute and it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" by these parties, namely their own complaint and answer.  Fed. R. Evid. 201(b).

United States District Court
For the Northern District of California

¶ 35 (alleging that the "endorsement stated that the who is an insured provision of the Policy was 'amended to include'" ATB "'as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.'").  In the endorsement, Diamond "promised to cover ATB for, among other things, "'[b]odily injury'. . . arising out of 'your products' . . . which are distributed or sold in the regular course of the vendor's business. . . ."  <u>Id.</u> at ¶ 4.  The endorsement schedule listed ATB's United Kingdom address.  <u>Id.</u> at ¶ 3.  Marin alleges that ATB distributes Marin bikes only in the United Kingdom and Diamond understood this at all times relevant.  <u>Id.</u> at ¶¶ 3-4.

In April 2002 in the United Kingdom, Alan Ide suffered serious injuries in an accident while riding a bicycle that was designed and made by Marin.  <u>Id.</u> at ¶ 1.  Marin had originally sold the bicycle in the United States to ATB pursuant to a 1999 written agreement between Marin and ATB.  <u>Id.</u> at ¶ 1.  Marin first learned of the accident when Ide brought suit in the United Kingdom against ATB, Marin and Fairly Bike Manufacturing Company, which assembled the bicycle's components.  <u>Id.</u> at ¶¶ 5.  Marin refers to this suit as the "Ide action."  <u>Id.</u>

In his suit, Ide alleged that the handlebar of the bicycle he was riding was defective and therefore broke, causing his injuries.  <u>Id.</u> at ¶ 6.  The handlebar on Ide's bicycle was designed in part, selected for use on the bicycle, and assembled under the supervision of, Marin's Director of Product Development who lived in the United States.  <u>Id.</u>  The Director of Product Development carried out these activities, which Ide argued made

Marin liable for his injuries, while he was temporarily away for a
short time in China on Marin's business.  Id.

Upon learning of the Ide suit, Marin immediately notified
Diamond of it and demanded that Diamond provide a defense to Marin
and ATB.  Id. at ¶ 5.  Diamond refused to defend either, claiming
it had no such duty under the policy.  Id.  Marin did not appear
and defend the Ide action, and ATB did appear and defend at its
own expense.  Id.

Ide was awarded judgment against ATB and Marin in the Ide
action.  Id. at ¶ 7.  ATB settled with Ide.  Id.  Then, in what
Marin refers to as the ATB action, ATB moved to recover from Marin
the amount of the settlement paid to Ide as well as the cost of
ATB's defense.  Id.  The parties agree that this action was
brought in the United Kingdom.  See, e.g., Joint Case Management
Statement, Docket No. 23, 2; see also 2RJN, Ex. E, Ex. 1
(complaint filed in the ATB action).  In the ATB action, ATB
obtained judgment against Marin for more than one and a half
million dollars.  1ACC ¶ 7.

On September 23, 2011, ATB filed a separate federal action
against Marin in the Northern District of California, seeking to
enforce the foreign judgment against Marin.  Compl., Docket No. 1,
ATB Sales Ltd. v. Marin Mtn. Bikes, Inc., Case No. 11-4755 (N.D.
Cal.).  Marin refers to this as the enforcement action.  1ACC ¶ 8.
Diamond was not named as a party in the enforcement action.  When
ATB brought the enforcement action, Marin again demanded that
Diamond defend Marin.  Id.  Diamond refused again.  Id.

On October 24, 2011, Diamond filed the instant suit against
ATB and Marin, seeking a declaratory judgment that it did not have

6

United States District Court
For the Northern District of California

a duty to defend or indemnify Marin in connection with the United Kingdom accident.  Compl. ¶¶ 9-13.

Marin and ATB agreed to a settlement of the enforcement action in late 2011.  Id.  On May 2, 2012, ATB and Marin filed a notice of settlement in the enforcement action.  Case No. 11-4755, Docket No. 15.  The parties subsequently filed a stipulation for dismissal of ATB's claims with prejudice.  Case No. 11-4755, Docket Nos. 16, 17.

At a case management conference in the instant action on May 2, 2012, the Court set May 30, 2012 as the deadline to add additional parties or claims.  Docket No. 28.

On May 16, 2012, Marin filed its answer to Diamond's complaint and asserted two counterclaims against Diamond for breach of the insurance contract and breach of the covenant of good faith and fair dealing.  Docket No. 30.

On May 18, 2012, Diamond voluntarily dismissed its claims against ATB in the current case.  Docket No. 31.

On June 11, 2012, Diamond filed its first motion to strike Marin's affirmative defenses and to dismiss its counterclaims or for a more definite statement.  Docket No. 32.

On June 25, 2012, Marin filed its opposition to Diamond's motion.  Docket No. 33.  With its opposition, Marin submitted proposed amended affirmative defenses.

On July 2, 2012, Diamond filed its reply in support of its motion to strike and to dismiss.  Docket No. 34.  In the reply, Diamond argued that the proposed amended affirmative defenses were defective.

1    Later on July 2, 2012, Marin filed amended counterclaims for

2   breach of the insurance contract, tortious breach of the covenant

3   of good faith and fair dealing, and fraud.  Docket No. 35.

4    On July 25, 2012, the Clerk issued a notice, stating that the

5   Court, on its own motion, took Diamond's first motion to strike

6   and to dismiss under submission on the papers.

7    Later on July 25, 2012, Diamond filed a second motion to

8   dismiss or strike Marin's amended counterclaims.  Docket No. 36.

9   The Court held a hearing on Diamond's second motion on August 30,

10  2012.

11                           LEGAL STANDARD

12  I.   Motion to Dismiss

13   A complaint must contain a "short and plain statement of the

14  claim showing that the pleader is entitled to relief."  Fed. R.

15  Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to

16  state a claim, dismissal is appropriate only when the complaint

17  does not give the defendant fair notice of a legally cognizable

18  claim and the grounds on which it rests.  Bell Atl. Corp. v.

19  Twombly, 550 U.S. 544, 555 (2007).  In considering whether the

20  complaint is sufficient to state a claim, the court will take all

21  material allegations as true and construe them in the light most

22  favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d

23  896, 898 (9th Cir. 1986).  However, this principle is inapplicable

24  to legal conclusions; "threadbare recitals of the elements of a

25  cause of action, supported by mere conclusory statements," are not

26  taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

27  (citing Twombly, 550 U.S. at 555).

28

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

II.  Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent or scandalous matter." The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994).  Matter is immaterial if it has no essential or important relationship to the claim for relief plead.  Id.  Matter is impertinent if it does not pertain and is not necessary to the issues in question in the case.  Id. "Superfluous historical allegations are a proper subject of a motion to strike."  Id.  Motions to strike are disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.  Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).  They should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.

1   Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D.
2   Cal. 1991).

3                              DISCUSSION
4   I.    Motion to strike affirmative defenses

5        Diamond seeks to strike Marin's affirmative defenses.  Marin
6   does not oppose the request that its affirmative defenses be
7   stricken, but requests leave to file its proposed amended
8   affirmative defenses.  If a defense is stricken, "[i]n the absence
9   of prejudice to the opposing party, leave to amend should be
10  freely given."  Wyshak v. City Nat'l Bank, 607 F.2d 824, 826 (9th
11  Cir. 1979).  Diamond does not contend that it would be prejudiced
12  by allowing Marin to amend the affirmative defenses.  Instead, it
13  replies that the proposed amended affirmative defenses are still
14  defective and that leave to amend should not be granted.

15       In its motion, Diamond did not argue that leave to amend the
16  affirmative defenses should be denied or that any possible
17  amendment would be futile as a matter of law.  Because Diamond
18  attacks the proposed amendments in its reply brief, Marin did not
19  have an opportunity to respond its arguments or to defend the
20  sufficiency thereof.

21       Accordingly, the Court GRANTS Diamond's motion to strike the
22  original affirmative defenses.  The Court further GRANTS Marin
23  leave to file its proposed amended affirmative defenses, and DEEMS
24  Diamond's reply brief to be a motion to strike the amended
25  affirmative defenses.  Within two weeks of the date of this Order,
26  Marin may file a response to Diamond's motion to strike the
27  amended affirmative defenses, in a single brief of fifteen pages.
28  Within one week thereafter, Diamond may file a reply in further

United States District Court
For the Northern District of California

10

**United States District Court**
For the Northern District of California

1   support of the motion to strike the amended affirmative defenses,

2   contained in a brief of eight pages or less.

3   II.   Motions to dismiss or strike counterclaims

4         A. Marin's original counterclaims

5         Diamond seeks dismissal of Marin's original counterclaims and

6   asks that the Court deny Marin leave to amend.  Marin does not

7   oppose dismissal of its original counterclaims, but does oppose

8   Diamond's request that it not be permitted to amend the

9   counterclaims.

10        Marin asserts that it does not need leave of the Court to

11  amend its counterclaims and that it may do so as a matter of

12  right.  Rule 15(a)(1) provides,

13        A party may amend its pleading once as a matter of
          course within: . . . if the pleading is one to which a
14        responsive pleading is required, 21 days after service
          of a responsive pleading or 21 days after service of a
15        motion under Rule 12(b), (e), or (f), whichever is
          earlier.
16
17  Federal Rule of Civil Procedure 15(a)(1)(B).  A counterclaim is a

    pleading to which a responsive pleading is required.  <u>See</u> Federal
18
    Rule of Civil Procedure 12(a)(1)(B).
19
20        Marin has not previously amended its counterclaims or any

    other pleading.  Thus, it was permitted to amend its pleading as a
21
    matter of right within twenty-one days of the date on which
22
    Diamond filed its motion under Rule 12(b), (e), and (f), or by
23
    July 2, 2012.  Marin did so.  Because Marin filed its amended
24
    counterclaims as a matter of right, Diamond's first motion to
25
    dismiss the original counterclaims and that Marin not be granted
26
    leave to amend is DENIED AS MOOT.
27

28

                                    11

1    In its second motion to dismiss or strike, Diamond suggests

2   in a footnote that the amended counterclaims exceeded the breadth

3   of amendments permissible as a matter of right because Marin did

4   not assert a fraud counterclaim in its original answer and added

5   it into the 1ACC, for the first time, after the deadline to assert

6   new claims had passed.  Diamond, however, did not move to strike

7   the fraud counterclaim on this basis and only moved to dismiss the

8   fraud counterclaim under Federal Rules of Civil Procedure 8(a),

9   9(b) and 12(b)(6).  See Mot. at 1.  In the relevant footnote,

10   Diamond stated that it "notes that Marin's filing of this new

11   fraud cause of action violates" the scheduling order.  Mot. at 19,

12   n.6.  Because Diamond did not move on this basis or put Marin on

13   notice that it was doing so, the Court does not reach the merits

14   of this argument.

15        B. Marin's 1ACC

16        In its second motion to dismiss or strike, Diamond moves to

17   dismiss all three of Marin's amended counterclaims.  It also moves

18   to strike portions of the second counterclaim as immaterial.

19            1. Breach of contract

20        In the 1ACC, Marin alleges Diamond owed a duty to defend both

21   Marin and ATB in the Ide action, because "Ide alleged in a 'suit'

22   that he suffered 'bodily injury' arising out of an 'occurrence'

23   when the Bicycle broke when he was riding it in in April 2002

24   during the policy period," the product was sold in the United

25   States and the injury arose from activities of the Director of

26   Product Development while he was temporarily away from the United

27   States on Marin's business.  1ACC ¶¶ 1, 6, 12.  Marin also avers

28   that provision (c)(2) of the definition of coverage territory does

12

United States District Court
For the Northern District of California

1   not apply to the duty to defend, because such an application

2   "would render the contractual promise to defend meaningless and

3   illusory." Id. at ¶ 13.  Marin further alleges that Diamond

4   breached the duty to defend by failing to "defend or indemnify"

5   Marin and ATB in the Ide action and failing to "defend or

6   indemnify" Marin in the ATB and enforcement actions.  Id. at ¶ 14.

7        Diamond moves to dismiss this claim on the basis that Marin

8   has not plead that provision (c)(2) of the definition of coverage

9   territory was met.  Diamond repudiates any suggestion that it also

10  seeks to dismiss this claim on the basis that Marin has not

11  properly alleged that either subpart of provision (c)(1) of this

12  definition was met.  Reply at 4 n.9.[3]  Diamond argues that Marin

13  has not, and cannot, plead that the Ide and ATB actions, which

14  addressed the merits of Ide's claims against ATB and ATB's claims

15

16  _____

17       [3] In its motion, Diamond argued that Marin had not met either
    subpart of (c)(1).  Even if Diamond had not disclaimed this
18  argument, the Court would have rejected it.  Diamond first
    disputed the factual accuracy of Marin's allegations that the bike
19  was sold in the United States.  Mot. at 10, n.1.  An evidentiary
    argument such as this is improper for a motion to dismiss and the
20  Court disregards it.

21       Second, Diamond contended, "According to the appellate
    opinion in the Ide Action, Ide claimed there was a 'defect in the
22  handlebar because it had insufficient strength to withstand the
    loads imposed upon it in ordinary use as a mountain bike.'"  Mot.
23  at 11, n.1 (quoting RJN Ex. I ¶ 10).  Diamond also asserted that
    Marin did not allege that the selection of this handlebar "was
24  made during the alleged trip to China."  Id.  However, Marin did
    make such an allegation.  See 1ACC ¶ 6 ("The handlebar on Ide's
25  Bicycle was designed in part, selected for use on the Bicycle, and
    assembled under the supervision of, Marin's Director of Product
26  Development who lived in the United States.  Marin's Director of
    Product Development did all of those things--design work on the
27  allegedly defective handlebar and oversight of the assembly of
    Marin bicycles--while he was temporarily away for a short time in
    China on Marin's business.").

28

1   against Marin respectively, created a potential for a judgment on

2   the merits in the United States of America, Puerto Rico or Canada,

3   because both were filed in the United Kingdom.  Diamond further

4   contends that the enforcement action filed in the Northern

5   District of California cannot satisfy this requirement.  Diamond

6   also argues that the additional insured coverage is not rendered

7   illusory by such a restriction because, although ATB may

8   exclusively distribute bicycles in the United Kingdom, it could

9   still be sued in the United States.  Finally, Diamond argues that

10  Marin improperly seeks damages beyond its own expenses incurred in

11  defending the Ide and ATB actions and that it did not incur any

12  such expenses.

13       Marin responds that provision (c)(2) is not a venue clause,

14  that Diamond's construction would require that "Marin is required

15  to lose in Court on the merits of a covered claim before Diamond

16  State is required to defend," which is illogical.  Marin also

17  contends that this subsection is deceptive, buried deep within the

18  policy and void.  Marin further argues that the subsection is

19  ambiguous and cannot be applied to ATB.  Finally, Marin contends

20  that it sufficiently plead a basis for damages.

21       California substantive insurance law governs this diversity

22  case.  Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th

23  Cir. 2001).  Under California law, interpretation of an insurance

24  policy and whether it provides coverage is a question of law to be

25  decided by the court.  Waller v. Truck Ins. Exchange, 11 Cal. 4th

26  1, 18 (1995).

27       An insurance carrier "owes a broad duty to defend its insured

28  against claims that create a potential for indemnity."  Horace

14

1   Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993); see

2   also Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966) ("We

3   point out that the carrier must defend a suit which potentially

4   seeks damages within the coverage of the policy.").  "Implicit in

5   this rule is the principle that the duty to defend is broader than

6   the duty to indemnify; an insurer may owe a duty to defend its

7   insured in an action in which no damages ultimately are awarded."

8   Horace Mann Ins., 4 Cal. 4th at 1081.  However, the duty to defend

9   is not unlimited; it is measured by the nature and kinds of risks

10  covered by the policy.  Waller, 11 Cal. 4th at 19.

11      The burden is on the insured to establish the existence of a

12  potential for coverage.  Montrose Chem. Corp. v. Super. Ct., 6

13  Cal. 4th 287, 300 (1993).  Any doubt as to whether the facts

14  establish the existence of the defense duty must be resolved in

15  the insured's favor.  Id. at 299-200.  Once the insured meets its

16  burden, the insurer must establish the absence of any such

17  potential for coverage.  Id.  Thus, "the insured need only show

18  that the underlying claim may fall within policy coverage; the

19  insurer must prove that it cannot."  Id.

20      "The determination whether the insurer owes a duty to defend

21  usually is made in the first instance by comparing the allegations

22  of the complaint with the terms of the policy.  Facts extrinsic to

23  the complaint also give rise to a duty to defend when they reveal

24  a possibility that the claim may be covered by the policy."

25  Horace Mann Ins., 4 Cal. 4th at 1081.  The duty to defend is a

26  continuing one, arising on tender of defense and lasting until the

27  underlying lawsuit is concluded.  Montrose Chem., 6 Cal. 4th at

28  295.

United States District Court
For the Northern District of California

Based on the allegations in the 1ACC and the relevant policy language, the Court finds that Marin has not properly plead that Diamond breached its duty to defend in denying coverage to Marin. Provision 1(b)(1) sets forth that the policy covers occurrences that take place within the coverage territory.  The definition of coverage territory in turn sets forth that the policy covers any occurrence that takes place within the United States, Puerto Rico or Canada, or "all other parts of the world" if certain conditions are met, including that liability is determined in a suit on the merits in the United States, Puerto Rico or Canada or in a settlement to which Diamond agreed.

This reading does not require that Marin first lose a suit in the United States, Puerto Rico or Canada before the duty to defend is triggered, as it contends.  As explained above, the duty to defend is based on the potential for coverage, not the certainty of coverage.  If a suit had been filed in the United States, Puerto Rico or Canada that created the potential for meeting the other requirements set forth in the policy, the duty to defend may have arisen.  The insurer cannot wait until coverage is a certainty before it is required to defend.  Here, however, because Ide and ATB initiated suits in the United Kingdom, not in the United States, Puerto Rico or Canada, based on an occurrence that also took place in the United Kingdom, there was no possibility that the litigation could result in a "suit on the merits" in the United States, Puerto Rico or Canada, and thus the possibility of coverage was eliminated.

The Court also does not find that Marin has adequately plead that the territorial limitation was an inconspicuous exclusion and

United States District Court

For the Northern District of California

therefore unenforceable.  The territorial limitation appears in

the grant of coverage and not in an exclusion, a significant

distinction.  As the California Court of Appeal has explained,

> An insurance policy is written in two parts: the
> insuring agreement defines the type of risks which are
> covered, while the exclusions remove coverage for
> certain risks which are initially within the insuring
> clause. . . . Therefore, before even considering
> exclusions, a court must examine the coverage provisions
> to determine whether a claim falls within the potential
> ambit of the insurance. . . . This is significant for
> two reasons.  First, when an occurrence is clearly not
> included within the coverage afforded by the insuring
> clause, it need not also be specifically excluded. . . .
> Second, although exclusions are construed narrowly and
> must be proven by the insurer, the burden is on the
> insured to bring the claim within the basic scope of
> coverage, and (unlike exclusions) courts will not
> indulge in a forced construction of the policy's
> insuring clause to bring a claim within the policy's
> coverage.

Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 802-803

(1994) (internal quotation marks and formatting omitted).  Thus,

because this definition is part of the insuring agreement and not

part of an exclusion, the burden of proof is on Marin to establish

that its claim falls within the scope of coverage.  According to

Marin's description of the policy in the 1ACC, the fact that there

was a territorial limitation to the insurance coverage was

disclosed on the first page of the agreement, which stated that

the coverage was restricted to instances in which "The 'bodily

injury' or 'property damage' is caused by an 'occurrence' that

takes place in the 'coverage territory.'"  1ACC ¶¶ 11, 34.  Thus,

the insured was on notice that the policy did not provide

unlimited worldwide coverage.  Further, although Marin argues its

contention is supported by its allegations that the font of the

definition text was small and that the language was obscured by

1   the fact that the coverage premiums took into account domestic and

2   international sales, neither of these allegations is made in the

3   1ACC itself but are asserted without citation only in the

4   opposition brief.  Finally, the Court does not find that, as Marin

5   urges, the policy suggested that it covered all international

6   claims because it contained an "all parts of the world" coverage

7   provision.  The only policy language quoted in the 1ACC that uses

8   these words is the coverage territory definition itself, which

9   immediately follows these words with the word "if" and sets forth

10  the limitations on that coverage.  Thus, although the policy did

11  provide that it covered certain claims related to events that took

12  place in "all parts of the world," it set forth restrictions on

13  such coverage.

14      Marin also contends that the coverage limitation, if applied

15  to ATB, would render the additional-insured endorsement issued to

16  it illusory.  An insurance policy is illusory only if it provides

17  no coverage or benefit to the insured.  See Maryland Cas. Co. v.

18  Reeder, 221 Cal. App. 3d 961, 978 (1990); see also Sdr Co. v. Fed.

19  Ins. Co., 196 Cal. App. 3d 1433, 1437 (1987) ("the law does not

20  countenance such a nullity, for to do so would disappoint the

21  reasonable expectations of the insured, violate the general rules

22  of construing insurance contracts and most particularly

23  exclusions, in favor of the insured").  Marin alleges that ATB

24  only distributes Marin bikes in the United Kingdom, which Diamond

25  knew, and that the additional-insured endorsement provided ATB

26  with coverage for "'[b]odily injury'. . . arising out of 'your

27  products'. . . which are distributed or sold in the regular course

28  of the vendor's business. . . ."  1ACC ¶¶ 3-4.  Marin argues that

limiting coverage for ATB only to suits brought in the United States, Puerto Rico and Canada renders the endorsement illusory because ATB did not do business in any of these countries and as such no litigant could ever obtain jurisdiction over it in these countries.  Diamond responds that it would not be "absolutely impossible" for ATB to use the coverage as Marin contends, because lack of personal jurisdiction is merely a defense that ATB could choose to assert or waive and that, if ATB chose to assert this defense, Diamond would be obliged to provide such a defense. Further, it is not impossible that ATB could be sued in United States, Puerto Rico and Canada.  For example, an American tourist might travel to the United Kingdom, get injured while using a Marin bicycle there and then choose to sue ATB in the United States after returning home.  Marin's allegations, accepted as true, do not establish that the possibility of utilizing the coverage was a nullity rather than merely remote.  Accordingly, the definition of coverage territory does not render the additional-insured endorsement illusory and Marin did not properly plead that Diamond breached the duty to defend in denying coverage to ATB.

Because Marin has not properly plead that Diamond breached its duty to defend either ATB or Marin, the Court GRANTS Diamond's motion to dismiss Marin's first amended counterclaim.  The Court also grants Marin leave to amend to remedy the deficiencies discussed above if it can truthfully do so.

United States District Court
For the Northern District of California

2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Because the Court finds that Marin has not properly alleged that Diamond breached its contract with Marin by refusing to defend it or ATB in the United Kingdom actions, the Court also grants Diamond's motion to dismiss Marin's claim for breach of the implied covenant of good faith and fair dealing. "California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008) (citing Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 35-36 (1995)). Marin may reassert this claim if it amends the breach of contract claim as discussed above.

Because the Court dismisses this claim, it does not reach Diamond's request to strike as immaterial Marin's allegation related to "other wrongful, illegal conduct including violation of law and regulations by which Defendant is bound."

3. Fraud

Diamond seeks to dismiss the fraud counterclaim on the basis that Marin impermissibly seeks to turn its breach of contract counterclaim into a tort claim. "The 'rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement.'" Antonick v. Elec. Arts Inc., 2011 U.S. Dist. LEXIS 109735 (N.D. Cal.) (quoting Oracle USA, Inc. v. XL Global Servs., Inc., 2009 U.S. Dist. LEXIS 59999, at *4 (N.D. Cal.)). Here, almost all of Marin's fraud allegations center on purported false representations that Diamond made in the insurance contract itself. See, e.g., 1ACC ¶ 36

20

("Diamond's interpretation of the Policy, that Diamond's duty to defend the insured is conditioned on there first being a determination of the insured's liability to pay damages for the alleged bodily injury, renders the promise of such coverage so illusory as to be a fraud on the insureds.") (emphasis omitted); ¶ 39 ("At all times relevant, Plaintiff Marin relied on Diamond's representation in Policy [sic], that Diamond would provide Marin and ATB a defense to 'suits' alleging 'bodily injury' arising out of an 'occurrence' such as the Ide Action.").

Marin responds that it made allegations of misconduct that go beyond Diamond's breach of the policy.  It points to two specific paragraphs in support of this argument.  First, it points to paragraph twenty-one, which appears in the breach of covenant claim and is incorporated by reference into the fraud claim.  In this paragraph, Marin alleges that Diamond engaged in misconduct including "unreasonable delays in acting upon Marin's and ATB's claims" and "unreasonable and improper investigation and handling of Marin's and ATB's claims."  1ACC ¶ 21(c),(d).  However, in this paragraph, Marin has not alleged any specific misrepresentations made by Diamond, other than those it alleges appeared in the policy itself.

Second, Marin states in its opposition that, in paragraph 35 of the 1ACC, it plead that "at the issuance of the Additional Insured Endorsement, Diamond State misrepresented that it would provide a defense to ATB in any action alleging bodily injury against ATB."  Opp. at 21.  However, to the extent that Marin suggests that Diamond made this misrepresentation somewhere other than in the policy endorsement itself, this does not reflect what

United States District Court
For the Northern District of California

1  is alleged in paragraph 35 of the 1ACC.  In that paragraph, Marin

2  alleged that "the Additional Insured endorsement . . . was

3  provided to ATB per an understanding with Marin, and also appeared

4  to be a representation that Diamond would defend ATB in any action

5  alleging bodily injury against ATB."  1ACC ¶ 35.  This alleges

6  only a violation of a promise purportedly made the contract

7  itself.

8      Accordingly, the Court GRANTS Diamond's motion to dismiss the

9  fraud counterclaim.  Marin is granted leave to amend to assert

10 actionable fraudulent representations about the coverage that

11 would be provided for ATB made outside of the policy language

12 itself.

13                              CONCLUSION

14     For the reasons set forth above, the Court GRANTS in part

15 Diamond's first motion to strike and to dismiss and DENIES it in

16 part (Docket No. 32).  The Court also GRANTS Diamond's second

17 motion to dismiss or strike (Docket No. 36).

18     The Court GRANTS Marin leave to file its proposed amended

19 answer.  Marin shall file its amended answer in the docket within

20 three days of the date of this Order.

21     The Court DEEMS Diamond's reply brief to its first motion to

22 strike and to dismiss (Docket No. 34) to be a motion to strike the

23 amended affirmative defenses.  Within two weeks of the date of

24 this Order, Marin may file a response to Diamond's motion to

25 strike the amended affirmative defenses, in a single brief of

26 fifteen pages.  Within one week thereafter, Diamond may file a

27 reply in further support of the motion to strike the amended

28 affirmative defenses, contained in a brief of eight pages or less.

**United States District Court**
For the Northern District of California

The Court will resolve the motion to strike the amended
affirmative defenses on the papers.

   If Marin intends to file amended counterclaims, it shall do
so within seven days of the date of this Order.  Marin may only
remedy the deficiencies identified above as to the counterclaims
for breach of contract, tortious breach of the covenant of good
faith and fair dealing, and fraud, and may not assert new
counterclaims.  If Marin files amended counterclaims, Diamond
shall respond to them within fourteen days after they are filed.
If Diamond moves to dismiss or strike the amended counterclaims,
Marin shall respond to the motion within fourteen days after it is
filed.  Diamond's reply, if necessary, shall be due seven days
thereafter.  Any motion to dismiss or strike will be decided on
the papers.

   The Court RESETS the deadline to hear dispositive motions for
Thursday, December 13, 2012 at 2:00 p.m. and notes that the dates
for the pretrial conference and two-day jury trial may need to be
continued.

   IT IS SO ORDERED.


Dated:   9/10/2012

CLAUDIA WILKEN
United States District Judge