IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIAMOND STATE INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>  v.<br><br>MARIN MOUNTAIN BIKES, INC.; and<br>ATB SALES LIMITED,<br><br>       Defendants.<br>═══════════════════════════════/<br><br>AND ALL RELATED COUNTERCLAIMS<br>═══════════════════════════════/ | No. C 11-5193 CW<br><br>ORDER GRANTING<br>DIAMOND'S MOTION<br>TO DISMISS MARIN'S<br>SECOND AMENDED<br>COUNTERCLAIMS<br>(Docket No. 51)<br>AND GRANTING IN<br>PART, AND DENYING<br>IN PART, DIAMOND'S<br>MOTION TO STRIKE<br>MARIN'S AMENDED<br>AFFIRMATIVE<br>DEFENSES (Docket<br>No. 39) |

Plaintiff Diamond State Insurance Company moves to dismiss Defendant Marin Mountain Bikes, Inc.'s second amended counterclaims (2ACC) or alternatively for summary judgment. The Court previously deemed Diamond's reply brief to its first motion to strike and to dismiss to be a motion to strike Marin's amended affirmative defenses. Marin opposes both motions. The Court previously stated that it would resolve both motions on the papers. Having considered the papers filed by the parties, the Court grants Diamond's motion to dismiss the 2ACC and grants in part Diamond's motion to strike the amended affirmative defenses and denies it in part.

**United States District Court**
For the Northern District of California

BACKGROUND

I.   Allegations in Marin's 2ACC

The following facts are taken from Marin's 2ACC, amended affirmative defenses and certain other documents of which the Court takes judicial notice.

From July 16, 2001 until July 16, 2002, Diamond provided liability insurance to Marin, which designs and makes bicycles, under liability policy number MFG0000379.  2ACC, Docket No. 47, ¶¶ 1-2.  Marin alleges that it had also been insured by Diamond in prior years and that, each year, it "was told to complete an application for insurance and that such application was required by Diamond."  Id. at ¶¶ 5, 7.  Marin, however, does not state who said this.  The policy was purportedly available to Marin through its membership in the National Bicycle Component Manufacturer's Association" (NBCMA) and each year "Marin was required to join the NBCMA to be eligible for the insurance" coverage.  Id. at ¶¶ 3, 5.  "The application for insurance bore the name of NBCMA on it and was provided" to Marin by Diversified Risk Insurance Broker (Diversified) "for completion."  Id. at ¶ 5.

Marin alleges that it received a copy of the policy at "some point after July 16, 2001, and after the Policy took effect," that the policy consisted of "several sets of documents which numbered near 50 pages," and that "[b]uried in those documents was the Commercial General Liability Coverage Form."  Id. at ¶ 9.

Section I, Coverage A of the policy, as described in this form, provides coverage for "bodily injury and property damage liability."  Id. at ¶ 9, Ex. 3, Docket No. 47-3, 2.  On the first page, it states in part,

1.   Insuring Agreement

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    b.   This insurance applies to "bodily injury" or "property damage" only if:

        (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)  The "bodily injury" or "property damage" occurs during the policy period.

Id.  The first page of the policy advises that certain "words and phrases that appear in quotation marks have special meaning," and directed readers to refer to "Section V--Definitions."  Id.  On pages ten through thirteen, in Section V, the policy contains definitions for a number of terms, including the following:

    3. "Bodily injury" means bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time.

    4. "Coverage territory" means:

    a.   The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b.   International waters or airspace, provided that the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    c.   All parts of the world if:

        (1)  The injury or damage arises out of:

(a)  Goods or products made or sold by you in the territory described in a. above; or

(b)  The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2)  The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

. . .

13. "Occurrence" means an accident . . .

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  . . .

Id. at 11-14.  The same "language was included in prior Diamond policies issued to Marin before 2001."  Id. at ¶ 23.

The first page of the policy also advises, "The word 'insured' means any person or organization qualifying as such under Section II--Who Is An Insured."  Id. at ¶ 9, Ex. 3, 2. Section II in turn specifies certain individuals and entities that qualify as an insured, including, for example, "Your 'employees' . . . but only for acts within the scope of their employment or while performing duties related to the conduct of your business." Id. at 8.

Marin further alleges that it believed that Diamond provided "foreign liability coverage" to Marin under the policy because "Diamond needed information about Marin's foreign sales and then based premium calculation on those foreign sales at a different rate than domestic sales."  Id. at ¶ 9.  Specifically, each year, "Diversified told Marin that Diamond required Marin to provide its domestic sales receipts and 'foreign sales' receipts."  Id.

4

**United States District Court**
For the Northern District of California

"Marin was told that Diamond based its premiums for the Policy in part on these sales receipts and that different premium rates applied to the foreign sales receipts than to the domestic receipts." Id. Diamond periodically audited the sales receipts as well. Id. Marin alleges that, before the issuance of the instant policy and prior Diamond policies, Diversified provided Marin with an "'Insurance Schedule' showing Diamond's coverage, which always included 'Foreign Sales.'" Id. at ¶ 6. The declarations pages of the policy show that a portion of the premium was calculated based on Marin's "Manufacturing NOC/foreign receipts." Id. at ¶ 7, Ex. 1, Docket No. 47-1, 3.[1] The declarations page also listed as insured Marin International, Marin Mountain Bikes GMBH (Germany) and Yamoto Bicycle Company, which Marin alleges are "companies related to Marin that did business overseas." Id. at ¶ 7 & Ex. 1, 2. Around the time that the policy was issued in 2001, the National Insurance Professionals Corp. (NIPC), on behalf of Diamond, also issued to Marin a document entitled "Policy Changes," which referred to a decrease in "the premium basis" for "Manufacturing NOC/foreign receipts." Id. at ¶ 8, Ex. 2, 2.

Marin also alleges that the policy had an "Additional Insured--Vendors" endorsement that listed ATB Sales Limited (ATB) as an additional insured under the policy. Id. at ¶ 10, Ex. 1, 4. In addition, Marin attached to the 2ACC an "Additional Insured--Designated Person or Organization" endorsement that listed ATB as

---

[1] All citations to the record refer to the ECF page designation.

**United States District Court**
For the Northern District of California

an additional insured.  Id. at ¶ 12, Ex. 1, 6.  ATB purchases
Marin's bicycles and then sells and distributes them in the United
Kingdom only, which Marin contends Diamond understood.  Id. at
¶¶ 10-11.  The endorsement schedules listed ATB's United Kingdom
address.  Id., Ex. 1, 4, 6.  The first endorsement provided that
Section II, regarding who is an insured, was "amended to include
as an insured" ATB "but only with respect to 'bodily injury' or
'property damage' arising out of 'your products' . . . which are
distributed or sold in the regular course of the vendor's
business," subject to certain exclusions.  Id., Ex. 1, 4.  The
second endorsement provided that this section of the policy was
"amended to include an insured" ATB "but only with respect to
liability arising out of your operations or premises owned by or
rented to you."  Id., Ex. 1, 6.  Identical "ATB additional insured
endorsements" had been issued to Marin in previous years.

     "Prior to July 2001, Marin had at least one umbrella
insurance policy that specifically excluded by endorsement suits
brought anywhere outside the United States and Canada."  Id. at
¶ 13.  Marin alleges that, for that policy, "Diversified
specifically brought the endorsement's exclusion to Marin's
attention," but that "Diversified never told Marin that [the
Diamond] policies did not provide defense coverage for actions
brought outside the United States."  Id.

     Marin contends on information and belief that Diamond, NICP,
Diversified and NBCMA have agreements "by which Diamond offers
insurance policies," such as the one at issue here, "to bicycle
manufacturers such as Marin."  Id. at ¶ 4.  Marin further alleges
on information and belief that there are "Agency Agreements by and

between Diamond, Diversified, and NICP pursuant to which
Diversified and NICP received commission payments for bringing
insureds such as Marin to Diamond." Id.  Marin alleges, "Pursuant
to these and other agreements, at all times relevant, Diamond,
NICP, NBCMA and Diversified were agents, representatives and or
joint venturers in the placement of the Policy and at all times
were acting in the course and scope of such agency, representation
and/or joint venture." Id.

In April 2002, in the United Kingdom, Alan Ide suffered
serious injuries in an accident while riding a bicycle that was
designed and made by Marin. Id. at ¶ 1. Marin had originally
sold the bicycle in the United States to ATB pursuant to a 1999
written agreement between Marin and ATB. Id. at ¶ 1; see also id.
at ¶ 32 (alleging that Diamond learned through its investigation
that "Marin and ATB had entered into contracts for the sale of
Marin bicycles and parts to ATB and that those contracts had been
partially negotiated and executed in the United States."). Marin
first learned of the accident when Ide brought suit in the United
Kingdom against ATB, Marin and Fairly Bike Manufacturing Company,
which assembled the bicycle's components and is "a related company
to Marin." Id. at ¶ 15. Marin refers to this suit as the Ide
action. Id.

In his suit, Ide alleged that the handlebar of the bicycle he
was riding was defective and therefore broke, causing his
injuries. Id. at ¶ 16. The handlebar on Ide's bicycle was
designed in part, selected for use on the bicycle, and assembled
under the supervision of, Marin's Director of Product Development
who lived in the United States. Id. Although Marin "designed,

7

United States District Court
For the Northern District of California

1   created specifications for, tested, and priced bicycles including

2   the model sold to Ide, in the United States," id. at ¶ 32(b), the

3   Director of Product Development carried out these activities

4   related to the handlebar while he was temporarily away for a short

5   time in China on Marin's business, id. at ¶ 16.

6        Upon learning of the Ide suit, Marin immediately notified

7   Diamond of it and demanded that Diamond provide a defense to Marin

8   and ATB.   Id. at ¶ 15.   Diamond refused to defend either company,

9   claiming it had no such duty under the policy.   Id.   In the letter

10  to Marin in which it denied a defense, which written after about a

11  year of investigation, Diamond relied solely on the ground that

12  the action was filed in England.   Id. at ¶ 17.   "At that time,

13  Diversified informed Marin that the Policy only covered suits

14  filed in the United States and that if suit were brought in the

15  United States then Diamond would provide a defense."   Id.   Marin

16  did not appear or defend the Ide action, and ATB appeared and

17  defended at its own expense.   Id. at ¶ 15.

18       Ide was awarded judgment against ATB and Marin in the Ide

19  action.   Id. at ¶ 18.   ATB settled with Ide.   Id.   Then, in what

20  Marin refers to as the ATB action, ATB moved to recover from Marin

21  the amount of the settlement paid to Ide as well as the cost of

22  ATB's defense.   Id.   The parties agree that this action was

23  brought in the United Kingdom.   See, e.g., Joint Case Management

24  Statement, Docket No. 23, 2.   In the ATB action, ATB obtained

25  judgment against Marin for more than one and a half million

26  dollars, "which included both the settlement amount paid to Ide

27  and the defense costs incurred by ATB."   2ACC ¶ 18.

28

United States District Court

For the Northern District of California

On September 23, 2011, ATB filed a separate federal action against Marin in the Northern District of California, seeking to enforce the judgment in the ATB action against Marin.  Id.; see also Compl., Docket No. 1, ATB Sales Ltd. v. Marin Mtn. Bikes, Inc., Case No. 11-4755 (N.D. Cal.).[2]  Marin refers to this as the enforcement action.  2ACC ¶ 19.  Diamond was not named as a party in the enforcement action.  When ATB brought the enforcement action, Marin again demanded that Diamond defend Marin.  Id. at ¶ 20.  Diamond refused again.  Id.

Marin and ATB agreed to a settlement of the enforcement action in late 2011, shortly after Diamond brought the instant action.  Id. at ¶ 21.  Marin alleges that, through the settlement, it "incurred actual monetary damage from Diamond's refusal to defend Marin under the Policy."  Id.

II.  Procedural history

On October 24, 2011, Diamond filed the instant suit against ATB and Marin, seeking a declaratory judgment that it did not have a duty to defend or indemnify Marin in connection with the United Kingdom accident.  Compl. ¶¶ 9-13.

On May 16, 2012, Marin filed its answer to Diamond's complaint and alleged two affirmative defenses for estoppel and concealment.  Docket No. 30.  At that time, Marin asserted two counterclaims against Diamond for breach of the insurance contract

----

[2] The Court takes judicial notice of the complaint filed in ATB Sales, but not of the truth of the matters asserted therein. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 (9th Cir. 2006); McMunigal v. Bloch, 2010 U.S. Dist. LEXIS 136086, at *7 n.1 (N.D. Cal.).

United States District Court
For the Northern District of California

1   and breach of the covenant of good faith and fair dealing.  Docket

2   No. 30-1.

3        On May 18, 2012, Diamond voluntarily dismissed its claims

4   against ATB in the current case.  Docket No. 31.

5        On June 11, 2012, Diamond filed its first motion to strike

6   Marin's affirmative defenses and to dismiss its counterclaims or

7   for a more definite statement.  Docket No. 32.

8        On June 25, 2012, Marin filed its opposition to Diamond's

9   motion.  Docket No. 33.  With its opposition, Marin submitted

10  proposed amended affirmative defenses.  In the proposed

11  affirmative defenses, Marin omitted its affirmative defense for

12  concealment and added defenses of unclean hands and laches.

13       On July 2, 2012, Diamond filed its reply in support of its

14  motion to strike and to dismiss.  Docket No. 34.  In the reply,

15  Diamond argued that the proposed amended affirmative defenses were

16  defective.

17       Later on July 2, 2012, Marin filed amended counterclaims for

18  breach of the insurance contract, tortious breach of the covenant

19  of good faith and fair dealing, and fraud.  Docket No. 35.

20       On July 25, 2012, Diamond filed a second motion to dismiss or

21  strike Marin's amended counterclaims.  Docket No. 36.

22       On September 10, 2012, the Court granted in part and denied

23  in part Diamond's first motion to dismiss and strike, and granted

24  Diamond's second motion in part.  Docket No. 43.  The Court

25  granted Marin leave to file its proposed amended affirmative

26  defenses, deemed Diamond's reply in support of its first motion to

27  strike and to dismiss to be a motion to strike the amended

28  affirmative defenses and set a briefing schedule for an opposition

United States District Court
For the Northern District of California

1   and reply on the motion to strike.  The Court also granted Marin

2   leave to file amended counterclaims and set a briefing schedule

3   for any motion to strike or dismiss the amended counterclaims.

4        On September 11, 2012, Marin filed its amended answer, and on

5   September 17, 2012, it filed its 2ACC.  Docket Nos. 45 and 47.

6        On October 1, 2012, Diamond filed its motion to dismiss

7   Marin's 2ACC.  Docket No. 51.  Diamond alternatively seeks summary

8   judgment on the counterclaims.

9                             LEGAL STANDARDS

10  I.   Motion to Dismiss

11       A complaint must contain a "short and plain statement of the

12  claim showing that the pleader is entitled to relief."  Fed. R.

13  Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to

14  state a claim, dismissal is appropriate only when the complaint

15  does not give the defendant fair notice of a legally cognizable

16  claim and the grounds on which it rests.  Bell Atl. Corp. v.

17  Twombly, 550 U.S. 544, 555 (2007).  In considering whether the

18  complaint is sufficient to state a claim, the court will take all

19  material allegations as true and construe them in the light most

20  favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d

21  896, 898 (9th Cir. 1986).  However, this principle is inapplicable

22  to legal conclusions; "threadbare recitals of the elements of a

23  cause of action, supported by mere conclusory statements," are not

24  taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

25  (citing Twombly, 550 U.S. at 555).

26       A heightened pleading standard applies to claims of fraud.

27  In all averments of fraud or mistake, the circumstances

28  constituting fraud or mistake shall be stated with particularity."

11

Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

As a general rule, a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  Federal Rule of Procedure 12(d) provides that, when "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."   "However, '[a] court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'"  Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (noting that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

1 | incorporated into the complaint by reference, and matters of which
2 | a court may take judicial notice").

3 |      When granting a motion to dismiss, the court is generally
4 | required to grant the plaintiff leave to amend, even if no request
5 | to amend the pleading was made, unless amendment would be futile.
6 | Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
7 | F.2d 242, 246-47 (9th Cir. 1990).  In determining whether
8 | amendment would be futile, the court examines whether the
9 | complaint could be amended to cure the defect requiring dismissal
10 | "without contradicting any of the allegations of [the] original
11 | complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th
12 | Cir. 1990).

13 | II.  Motion to Strike

14 |      Rule 12(f) provides that, on its own or on a motion from a
15 | party, a "court may strike from a pleading an insufficient defense
16 | or any redundant, immaterial, impertinent, or scandalous matter."
17 | Fed. R. Civ. P. 12(f).  "The purposes of a Rule 12(f) motion is to
18 | avoid spending time and money litigating spurious issues."  Barnes
19 | v. AT&T Pension Benefit Plan -Nonbargained Program, 718 F. Supp.
20 | 2d 1167 (N.D. Cal. 2010) (citing Fantasy, Inc. v. Fogerty, 984
21 | F.2d 1524, 1527 (9th Cir. 1993), reversed on other grounds, 510
22 | U.S. 517 (1994)).

23 |      "The Ninth Circuit has long held that '[t]he key to
24 | determining the sufficiency of pleading an affirmative defense is
25 | whether it gives plaintiff fair notice of the defense.'"  Perez v.
26 | Gordon & Wong Law Group, P.C., 2012 WL 1029425, at *6 (N.D. Cal.)
27 | (quoting Wyshak v. City Nat. Bank, 607 F.2d 824, 827 (9th Cir.
28 | 1979)).  In Wyshak, the Ninth Circuit applied the fair notice

pleading standard for complaints governed by Conley v. Gibson, 355

U.S. 41 (1957), to the pleading of affirmative defenses.  See

Wyshak, 607 F.2d at 827 (citing Conley, 355 U.S. at 47-48).

Conley held that "a complaint should not be dismissed for failure

to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would

entitle him to relief."  355 U.S. at 45-46 (footnote omitted).

However, the Supreme Court's decisions in Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662

(2009), "departed from Conley and redefined the pleading

requirements under Rule 8."  Perez, 2012 WL 1029425 at *6.  "Under

Twombly and Iqbal, 'the pleading standard Rule 8 announces . . .

demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation.'"  Id. (quoting Iqbal, 556 U.S. at 678).  "Rather, 'in

order to give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests,' Twombly, 550 U.S. at 554-55,

'a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face,

Iqbal, 556 U.S. at 678.'"  Id. (internal quotation marks and

citations omitted).

Like other judges in this district who have considered the

question of what pleading standard applies to affirmative

defenses, this Court has recently held that "the heightened

pleading standard set forth in Twombly and Iqbal also applies to

affirmative defenses."  Powertech Tech., Inc. v. Tessera, Inc.,

2012 WL 1746848 at *5 (N.D. Cal.).  "'Applying the standard for

heightened pleading to affirmative defenses serves a valid purpose

in requiring at least some valid factual basis for pleading an

affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply.'" Barnes, 718 F. Supp. 2d at 1171-72 (quoting Hayne v. Green Ford Sales, Inc., 263 F.R.D. 647, 650 (D. Kan. 2009)). See also Dion v. Fulton Friedman & Gullace LLP, 2012 WL 160221, at *2 (N.D. Cal.); Perez, 2012 WL 1029425, at *6; Bottoni v. Sallie Mae, Inc., 2011 WL 3678878, at *2 (N.D. Cal.); J & J Sports Productions v. Mendoza-Govan, 2011 WL 1544886, at *1 (N.D. Cal.). If a defense is struck, "[i]n the absence of prejudice to the opposing party, leave to amend should be freely given." Wyshak, 607 F.2d at 826.

DISCUSSION

I.   Motion to dismiss amended counterclaims or, in the
     alternative, for summary judgment

     Diamond moves to dismiss each of Marin's amended counterclaims and, in the alternative, seeks summary judgment against Marin on the amended counterclaims. Marin opposes the motion in its entirety, objects to treating the motion as a motion for summary judgment and asks that the motion be resolved as a motion to dismiss. The Court declines to treat the motion as one for summary judgment under Rule 56 and excludes all evidence submitted by both parties, except items that it specifically notes were incorporated into the pleading by reference or of which it takes judicial notice.

     A. Breach of contract

     In the 2ACC, Marin alleges that Diamond owed a duty to defend both Marin and ATB in the Ide action because "Ide alleged in a 'suit' that he suffered 'bodily injury' arising out of an 'occurrence' when the Bicycle broke while he was riding it in

April 2002 during the policy period." 2ACC ¶ 24. Marin further avers that the "accident took place in the 'coverage territory'" because it resulted from a product sold in the United States or from activities of a person whose home was in the United States but was away for a short time on its business. Id. In addition, Marin alleges that subpart (c)(2) of the definition of coverage territory cannot be reasonably read to apply to the duty to defend an action otherwise covered because such an application would "render the contractual promise to defend meaningless and illusory." Id. at ¶ 25. Marin also alleges that Diamond was required to "defend or indemnify Marin in the ATB Action and Enforcement Action, which were both actions seeking damages against Marin." Id. at ¶ 26.

As the Court has previously noted, California substantive insurance law governs this diversity case. Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 536 (9th Cir. 2001). Under California law, interpretation of an insurance policy and whether it provides coverage is a question of law to be decided by the court. Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 18 (1995). "Words in an insurance policy are to be read in their plain and ordinary sense," and "[a]mbiguity cannot be based on a strained instead of reasonable interpretation of a policy's terms." McKee v. State Farm Fire & Cas. Co., 145 Cal. App. 3d 772, 776 (1983) (internal quotation marks, citations and formatting omitted). "Policies of insurance, like other contracts, must be read as a whole with each part being read in conjunction with other portions thereof." Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.,

United States District Court

For the Northern District of California

211 Cal. App. 3d 1285, 1298 (1989) (internal quotation marks and citations omitted).

An insurance carrier "owes a broad duty to defend its insured against claims that create a potential for indemnity." Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993); see also Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 (1966) ("We point out that the carrier must defend a suit which potentially seeks damages within the coverage of the policy."). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." Horace Mann Ins., 4 Cal. 4th at 1081. However, the duty to defend is not unlimited; it is measured by the nature and kinds of risks covered by the policy. Waller, 11 Cal. 4th at 19.

The burden is on the insured to establish the existence of a potential for coverage. Montrose Chem. Corp. v. Super. Ct., 6 Cal. 4th 287, 300 (1993). Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor. Id. at 299-200. Once the insured meets its burden, the insurer must establish the absence of any such potential for coverage. Id. Thus, "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." Id.

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."

United States District Court
For the Northern District of California

1   Horace Mann Ins., 4 Cal. 4th at 1081.  The duty to defend is a

2   continuing one, arising on tender of defense and lasting until the

3   underlying lawsuit is concluded.  Montrose Chem., 6 Cal. 4th at

4   295.

5        The Court previously held that, in its 1ACC, Marin had not

6   sufficiently plead that Diamond breached the duty to defend in

7   denying coverage to Marin.  In defending the sufficiency of the

8   2ACC, Marin repeats many of the same arguments that the Court

9   already rejected in dismissing this counterclaim in the 1ACC.

10       Marin argues that subdivision (c)(2) of the definition of

11  coverage territory is not a venue clause, does not use the word

12  "venue" and cannot be construed to mean that Diamond has a duty to

13  defend only suits with a venue in the United States.[3]  However,

14  whether or not this provision can be properly titled a "venue

15  clause" is irrelevant.  Instead, the proper inquiry is whether the

16  underlying lawsuits created a potential for indemnity under the

17  policy.  The coverage terms of the policy provide that Marin has a

18  duty to defend suits seeking bodily injury, if the bodily injury

19  occurred during the coverage period and was the result of an

20  _____

21       [3] Marin also states that, "when Diamond refused to defend
    Marin in the Ide Action in 2005, it did so only on the ground that
22  the occurrence, Ide's accident, took place in London and London
    [w]as outside the coverage territory," and "Diamond did not deny
23  the claim in 2005 on the basis of the so called venue clause."
    Opp. at 10.  However, in the 2ACC, Marin has plead that "in 2005
24  Diamond sent a letter denying Marin a defense to the Ide Action on
    the sole ground that the action occurred in England," 2ACC ¶ 17,
25  which is precisely the ground that Diamond advances here.
    Further, even if Diamond had not relied on this ground in denying
26  coverage, if Marin suggests that Diamond thereby would have
    relinquished this defense to coverage, California courts have
27  rejected any such rule of automatic waiver.  See Waller, 11 Cal.
    4th at 31-35; Cal. Dairies, Inc. v. RSUI Indem. Co., 2010 U.S.
28  Dist. LEXIS 37712, at *22-36 (E.D. Cal.).

occurrence that took place within the coverage territory.  The definition of coverage territory in turn encompasses the United States, Puerto Rico and Canada, or "all other parts of the world" if certain conditions are met, including that liability is determined in a suit on the merits in the United States, Puerto Rico or Canada or in a settlement to which Diamond agreed.  The possibility that these conditions would be met creates the duty to defend, provided that other relevant conditions are met and no exclusion is applicable.

As the Court held in its prior order, contrary to Marin's contentions, this reading does not mean that Marin must first lose a suit in the United States, Puerto Rico or Canada is a precondition to trigger the duty to defend.  Although Marin asks the Court to reconsider its prior holding, Marin offers no basis for reconsideration.  The duty to defend is based on the potential for coverage, not the certainty of coverage.  If a suit had been filed in the United States, Puerto Rico or Canada that created the potential for meeting the other requirements set forth in the policy, the duty to defend may have arisen, even if the insured were ultimately not found to be responsible to pay damages. Because the duty to defend is based on the possibility that a suit may result in a covered claim under the policy and is broader than the duty to indemnify for such claims, an insurer may owe a duty to defend its insured in an action in which no duty to indemnify ultimately arises, for example, if the insured prevails on the underlying suit.  See Montrose, 6 Cal. 4th at 299 (noting "the rule that the insurer must defend in some lawsuits where liability under the policy ultimately fails to materialize").

Here, because Ide and ATB initiated the first two suits in the United Kingdom, not in the United States, Puerto Rico or Canada, based on an occurrence that also took place in the United Kingdom, there was no possibility that the litigation could result in a "suit on the merits" in the United States, Puerto Rico or Canada, and thus there was no potential for coverage and no duty for Diamond to defend ATB or Marin in the suits.[4]

Marin also argues again that the limitation to occurrences that took place within the coverage territory was an inconspicuous exclusion and therefore unenforceable. Marin contends that subdivision (c)(2) was inconspicuous because it was placed at the end of the definition of coverage territory and was not clearly labeled as an exclusion. As the Court noted in its prior order, the territorial limitation appears in a grant of coverage and not in an exclusion. As the California Court of Appeal has explained,

> An insurance policy is written in two parts: the insuring agreement defines the type of risks which are covered, while the exclusions remove coverage for certain risks which are initially within the insuring clause. . . . Therefore, before even considering exclusions, a court must examine the coverage provisions

---

[4] Diamond has moved to dismiss Marin's breach of contract counterclaim in its entirety. In its opposition, Marin has presented no argument that Diamond's denial of defense in the enforcement action filed in the United States constituted a breach of contract, and only refers to that action in addressing its fraud claim. Accordingly, the Court grants Diamond's motion to the extent that it seeks dismissal of the breach of contract claim premised on the failure to provide a defense in the enforcement action.

Further, the enforcement action did not seek to determine the insured's responsibility to pay damages for the occurrence, but instead merely sought recognition of a foreign judgment against Marin for those damages. See Compl., ATB Sales, Case No. 11-4755, ¶¶ 16-25. Accordingly, the enforcement action likewise did not create the potential for coverage under the policy.

> to determine whether a claim falls within the potential ambit of the insurance. . . . This is significant for two reasons.  First, when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded. . . . Second, although exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.

Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 802-803 (1994) (internal quotation marks and formatting omitted).  In these terms, Diamond did not withdraw coverage that had already been granted; instead, Diamond granted coverage that encompassed a specified set of risks, which did not include occurrences that took place in the United Kingdom unless Marin's responsibility to pay damages was determined in a suit on the merits in the United States, Puerto Rico or Canada and certain other conditions were met.  Thus, because this definition means that the occurrence was not encompassed within the coverage afforded by the insuring clause, it need not also be included in a clear and conspicuous exclusion.  Further, the first page of the policy specifically advised that words in quotation marks had special meanings contained in the definitions section of the policy.  "Coverage territory" appeared in quotation marks in the coverage provision and thus a reasonable insured would have known that this phrase had a particular definition that should be consulted.  The definition was not printed in smaller text than the other provisions in the policy.

Marin argues that the policy "gives the impression" that "foreign claims" were covered for several reasons, including that the policy used the phrase "all parts of the world" in the

United States District Court

For the Northern District of California

definition of coverage territory.  Opp. at 15-16.  However, the fact that the policy did not provide unlimited worldwide coverage was disclosed on the first page, which specifies that it covered only occurrences that took place in the coverage territory.  If the coverage territory included the entire world without limitation, there would be no reason for Diamond to specify a coverage territory.  Further, the phrase "all parts of the world" is immediately followed by the word "if" and the limitations on that coverage.

In the 2ACC, Marin also conclusorily states that the thirteen-page policy form itself was "buried" amid fifty pages of documents.  2ACC ¶ 9.  However, Marin cannot escape the coverage terms by suggesting that it did not read the policy itself or that it should not be expected to have done so.  See Hallmark Ins. Co. v. Superior Court, 201 Cal. App. 3d 1014, 1019 (1988) ("A reasonable person will read the coverage provisions of an insurance policy to ascertain the scope of what is covered."); Taff v. Atlas Assurance Co., 58 Cal. App. 2d 696, 703 (1943) ("It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he cannot thereafter complain that he did not read it or know its terms.  It is a duty of the insured to read his policy.").

Marin also contends that Diamond gave "the impression" it "would defend foreign claims like Ide's" because it calculated the premiums charged to Marin under the policy based on "differing rates" for "Marin's domestic and international sales."  Opp. at 16.  However, the premium rate charged for international sales is

significantly smaller than that charged for domestic sales.  Id. at ¶ 7, Ex. 1, 3.  Thus, this reasonably reflects that the risk of a covered claim arising out of a product sold abroad is smaller than one sold in the United States, and does not suggest that the coverage for such products is coextensive.

In addition, Marin argues that Diamond should have plainly stated that the "insurance does not apply to any liability arising out of any occurrence taking place outside of the United States of America, its territories or possessions, Puerto Rico or Canada" and that its failure to state this "clearly and prominently" rendered the definition ambiguous.  Opp. at 15, 17.  This, however, is not an accurate statement of the coverage that is clearly and unambiguously provided in the policy.  The policy is plain that coverage is provided for occurrences that take place outside of these areas, if certain conditions are met.

Finally, Marin argues that the application of this definition to ATB would render the coverage illusory.  The Court has already considered and rejected this argument and Marin offers no reason to reconsider that conclusion.  As the Court previously held, Marin's allegations, accepted as true, do not establish that the possibility of utilizing the coverage was a nullity rather than merely remote.  Further, Marin's argument that the additional insured endorsements for ATB did not themselves mention the geographic limitation is unavailing.  The endorsements modified the portion of the policy that defined who is an insured, but did not change the terms of the coverage that was provided to those who qualified as an insured.

Because Marin has not properly plead that Diamond breached its duty to defend either ATB or Marin, the Court GRANTS Diamond's motion to dismiss Marin's amended counterclaim for breach of contract.  Because the Court has previously granted leave to amend to remedy these deficiencies in the September 10, 2012 order and Marin has been unable to do so, this dismissal is without leave to amend.

B. Breach of implied covenant of good faith and fair dealing

Because the Court finds that Marin has not properly alleged that Diamond breached its contract with Marin by refusing to defend it or ATB in the United Kingdom actions, the Court also grants Diamond's motion to dismiss Marin's amended counterclaim for breach of the implied covenant of good faith and fair dealing. "California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008) (citing Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 35-36 (1995)).  Because the Court has previously granted leave to amend this counterclaim, this dismissal is without leave to amend.

C. Fraud

In its fraud counterclaim, Marin alleges that Diamond or its purported agents represented to Marin, or led it to believe, that "the Policy would provide a defense to actions brought against Marin in foreign countries where Marin bikes were sold and used." 2ACC ¶ 45.  As the basis for its claim, Marin points to the following representations made "[p]rior to the inception of [the] Policy in July 2001" by "Diamond and/or its agents":

United States District Court

For the Northern District of California

(1) they "informed Marin that Diamond calculated premiums for the liability policy, in part, on foreign sales and applied a different rate for Marin's foreign sales";

(2) they "informed Marin that its related international companies . . . were all covered under the liability and product liability coverage portions of the Policy";

(3) they "informed Marin that its distributor in the United Kingdom, ATB, was covered under both the Commercial Liability and Product Liability coverage portions of the Policy, and more specifically, that Diamond's policies prior to 2001 were amended to include" ATB "as an insured 'with respect to liability arising out of your operations or premises owned by or rented to you'";

(4) they "distinguished at least one prior umbrella liability policy from the Diamond policies, including the Policy, by pointing out that umbrella liability policy did not provide coverage for suits brought in foreign countries"; and

(5) they "represented in Diamond policies prior to 2001 that Diamond would defend Marin against any 'suit' alleging 'bodily injury' arising out of an 'occurrence' that took place within the 'coverage territory' (e.g. 'coverage territory' refers to the place the 'occurrence' causing the 'bodily injury' occurs) and that 'coverage territory,' included 'all other parts of the world' if the alleged injury arose out the sale of Marin's products in the United States or out of the activities of a person whose home is in the United States but who was away for a short time on Marin's business."

Id. at 45(1)-(5).  Marin further alleges that "all the communications in the years prior to the issuance of the Policy, as well as in the application process for the Policy prior to July, 2001" together led it to "believe that it was covered for the defense of suits that might be brought against it (and/or its related companies and distributors) in foreign countries where Marin products were distributed," that it did not know that Diamond would take a contrary position and that it had "purchased the Policy, paid premiums and distributed bikes in the United

United States District Court
For the Northern District of California

Kingdom reasonably believing that it had coverage for actions such as the Ide Action under the Policy." Id. at ¶¶ 46-48.

Marin pleads that the fraud counterclaim is brought "only as an alternative theory of liability to" the breach of contract and breach of covenant claims and that, if "it is determined that the Policy obligates Diamond to defend Marin in the alleged actions arising out of the Ide matter, then this cause of action would not apply." 2ACC ¶ 44.

Diamond moves to dismiss this counterclaim on a number of bases. First, Diamond contends that Marin's new allegations are not sufficiently plead under Federal Rule of Civil Procedure 9(b) and violate the Court's prior order granting Marin leave to amend this claim.

In the order resolving Diamond's earlier motions, the Court found that "almost all of Marin's fraud allegations center on purported false representations that Diamond made in the insurance contract itself," which could not support a fraud counterclaim. Docket No. 43, 20. In its opposition, Marin had argued that not all of the false representations were in the insurance contract because "'at the issuance of the Additional Insured Endorsement, Diamond State misrepresented that it would provide a defense to ATB in any action alleging bodily injury against ATB.'" Id. at 21 (quoting Opp. at 21). However, no such allegation was made in the counterclaims themselves. Thus, the Court dismissed the counterclaim and granted Marin "leave to amend to assert actionable fraudulent representations about the coverage that would be provided for ATB made outside of the policy language itself." Id. at 22. At the hearing on that motion, the Court

United States District Court
For the Northern District of California

1    also warned Marin that, in amending its counterclaims, it would

2    need to satisfy the requirements of Rule 9(b).  Docket No. 49, 17.

3         Diamond is correct that many of the new allegations that

4    Marin has added to this counterclaim are not limited to

5    misrepresentations made outside the terms of the policy about

6    coverage that would be provided for ATB.  Marin has attempted to

7    add allegations of such misrepresentations about the coverage that

8    would be provided for Marin itself, instead of for ATB.  In

9    addition, Marin has attempted to evade the Court's earlier ruling

10   that it cannot maintain a tort counterclaim premised on

11   misrepresentations made in the subject policy itself, by pleading

12   instead that Diamond made misrepresentations by including in

13   earlier policies the identical provisions that were in the subject

14   policy.  See 2ACC ¶¶ 23, 45(e) (quoting the policy's coverage

15   provisions and definitions for certain terms, including "suit" and

16   "coverage territory," and stating that this "language was also

17   included in prior Diamond policies issued to Marin before 2001).

18   However, this continues to fail to allege conduct that goes beyond

19   a breach of the policy.

20        Further, as Diamond argues, many of the new allegations do

21   not meet the requirements of Rule 9(b).  For example, Marin

22   contends that, before the issuance of the relevant policy and its

23   predecessors, Diversified gave Marin "an 'Insurance Schedule'

24   showing Diamond's coverage, which always included 'Foreign

25   Sales.'"  2ACC ¶ 6.  Marin repeatedly claims that it was misled by

26   all communications in the years prior to the issuance of the

27   policy.  See, e.g., id. at ¶¶ 14, 46.  However, Marin does not,

28   among other things, attach these schedules or allege what the

                                   27

1   schedules said about foreign sales or how these statements were

2   misleading.

3        Diamond also argues that the fraud counterclaim is barred by

4   the parol evidence rule.  Diamond avers that the policy agreement

5   appears on its face to be a complete expression of the parties'

6   agreement and that Marin may not allege that Diamond made promises

7   about coverage that vary from the plain language of the policy.

8   Marin does not dispute that the policy is an integrated agreement

9   or that Marin may not introduce parol evidence to contradict its

10  provisions.  Instead, Marin contends that the representations

11  allegedly made by Diamond or its agents about the duty to defend

12  did not contradict the policy's provisions.

13       The parol evidence rule establishes that "the terms contained

14  in an integrated written agreement may not be contradicted by

15  prior or contemporaneous agreements" and "necessarily bars

16  consideration of extrinsic evidence of prior or contemporaneous

17  negotiations or agreements at variance with the written

18  agreement."  Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 344

19  (2004).  There is a limited exception for fraud to the parol

20  evidence rule.  Cal. Code of Civ. Proc. § 1856(g).  However, the

21  fraud exception does not apply where the allegedly fraudulent oral

22  promises contradict or vary the written terms of a written

23  agreement.  See Brinderson-Newberg Joint Venture v. Pac. Erectors,

24  Inc., 971 F.2d 272, 281 (9th Cir. 1992) (citing Price v. Wells

25  Fargo Bank,  213 Cal. App. 3d 465, 484 (1989)); see also Bank of

26  Am. Assn. v. Pendergrass, 4 Cal. 2d 258, 263 (1935) (to be

27  admissible, parol evidence "must tend to establish some

28  independent fact or representation, some fraud in the procurement

28

**United States District Court**
For the Northern District of California

of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing").

Marin contends that the alleged prior representations that the policy would require Diamond to defend actions brought against Marin in foreign countries, without regard to the limitations provided in subdivision (c)(2) of the definition of coverage territory, do not conflict with the terms of the policy. Although Marin does not explain its argument in detail, it appears again to rely on its argument that this provision cannot apply to the duty to defend and applies only to the duty to indemnify. However, as addressed above, this subdivision does apply to the duty to defend. Thus, Marin's allegations, which it offers to show that Diamond was to defend it in actions brought in foreign courts, without meeting the requirements of subdivision (c)(2), do contradict and vary the terms of the policy, and thus are barred by the parol evidence rule.

Diamond also argues that Marin has not alleged sufficiently under Rule 8(a) or Rule 9(b) that the claimed misconduct of Diversified or any of the other purported agents can be attributed to Diamond as its agent or joint venturer. Marin defends that it has alleged properly that Diversified acted as Diamond's agent. Marin does not address or defend its conclusory allegation that Diversified was its joint venturer and does not dispute that Rule 9(b) applies to its allegations about the agency relationship for the purposes of this fraud claim.

"An agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" <u>United States v. Bonds</u>, 608

**United States District Court**
For the Northern District of California

F.3d 495, 506 (9th Cir. 2010) (quoting Restatement (Third) of Agency § 1.01).  "To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."  Id.

Marin has not alleged sufficiently that Diversified and Marin had an agency relationship.  It has alleged simply that Diversified was Diamond's agent and that they had an agency agreement pursuant to which Diversified received commission payments for bringing insureds to Diamond.  2ACC ¶ 4.  Marin has made only conclusory allegations, or allegations founded "upon information and belief," without providing any factual basis upon which its "information and belief" is based.  See Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) (affirming the dismissal of a complaint for lack of particularity under Rule 9(b) because "a plaintiff who makes allegations on information and belief must state the factual basis for the belief"); see also Papasan v. Allain, 478 U.S. 265, 286, (1986) (when resolving a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Such factual allegations are particularly important because "an insurance broker is generally an agent of the insured and not of the insurer" and has no authority to bind the insurance company. Marsh & McLennan of Cal., Inc. v. City of Los Angeles, 62 Cal. App. 3d 108, 117-18 (1976) (citations omitted) (explaining the difference between insurance agents and brokers); see also Osborn v. Ozlin, 310 U.S. 53, 60-61 (1940) (explaining that, unlike an insurance agent, a broker "is an independent middleman, not tied

to a particular company," even though "both are paid by commission").

Marin asserts in its opposition that an agency relationship "can be created by ratification, particularly where the principal--Diamond--accepts the benefits of the acts of the purported agent." Opp. at 22. However, Marin did not refer to ratification in the 2ACC itself and did not allege facts necessary to support such a theory. See, e.g., Reusche v. California Pacific Title Ins. Co., 231 Cal. App. 2d 731, 737 (1965) (to be held to have ratified the unauthorized acts of an agent, a principal must have been "apprised of all facts surrounding a transaction," or have been "ignoran[t] of the facts" due to its "own failure to investigate" under circumstances that were "such as to put a reasonable man on inquiry").

Accordingly, for these reasons, the Court GRANTS Diamond's motion to dismiss Marin's amended counterclaim for fraud. Because the Court has previously granted leave to amend to remedy these deficiencies in the September 10, 2012 order and Marin has been unable to do so, this dismissal is without leave to amend.

II. Motion to strike amended affirmative defenses

Diamond argues that each of Marin's asserted amended affirmative defenses--for estoppel, unclean hands and laches--is insufficiently plead and does not meet the plausibility standards set forth in Twombly. The parties agree that Marin's estoppel and unclean hands affirmative defenses are subject to the Rule 9(b) heightened pleading standard.

A. Estoppel

"A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." Simmons v. Ghaderi, 44 Cal. 4th 570, 584 (2008) (citing 13 Witkin Summ. Cal. Law Equity § 191).

In its estoppel defense, Marin alleges that "the conditions for coverage were met" and "Diamond State had a duty to defend Defendant in the Ide Action and the ATB Action as both arose from the same incident in which Ide was allegedly injured," and a duty to defend ATB in the Ide action. Amended Answer, Docket No. 45, ¶¶ 20, 26. It further avers that "Diamond State made representations of fact to Defendant, including within the Policy itself, that Diamond State would defend Defendant in an action such as that brought by Ide" and that, in "reasonable reliance on these representations and to its detriment, Defendant paid premiums on the Policy, sold its bikes through ATB, and incurred attorneys' fees and other defense costs." Id. at ¶¶ 21-22. Marin alleges that Diamond wrongfully denied a defense to both Marin and ATB, either knowingly or because it failed to conduct a full investigation into the Ide action and the conditions for coverage under the policy. Id. at ¶¶ 23-25. Purportedly as "a legal and proximate result of the wrongful denial of the defense of the Ide claim by Diamond State, Defendant was not defended in the Ide case and a judgment was taken against Defendant." Id. at ¶ 26.

**United States District Court**
For the Northern District of California

Diamond argues that Marin's allegations regarding "representations of fact" do not comply with Rule 9(b) because Marin has alleged only generally that factual representations were made without stating what they were, who made them, when they were made or how they were false.  In its opposition, Marin responds that it made "particular allegations about Diamond's misleading misrepresentation," but cites only to the conclusory allegation that Diamond "made representations of fact to Defendant, including within the Policy itself."  Opp. at 3 (citing Amended Answer ¶ 21).  However, Marin points to no specific representations made in the policy or elsewhere in support of this claim.  Thus, Marin has not alleged sufficiently that Diamond made "a representation or concealment of material facts."  <u>Simmons</u>, 44 Cal. 4th at 584.

Marin argues that any lack of particularity in its estoppel defense does not justify striking it because Marin has provided Diamond with sufficient notice of the defense "through its initial pleadings, amended pleadings, limited settlement discussion, and extensive discovery responses."  Opp. at 4.  However, as discussed above, Marin's amended counterclaims likewise do not provide sufficient notice of any purported fraudulent statements.  In addition, even if such discovery responses or information provided during settlement discussions could provide notice sufficient to fulfill this requirement, Marin offers no supporting argument or examples as to how these actually did provide further notice beyond what was plead in this amended answer or the pleadings already dismissed above.

Accordingly, the Court grants Diamond's motion to strike the affirmative defense of estoppel.

United States District Court
For the Northern District of California

B. Unclean hands

The affirmative defense of unclean hands is based on the equitable maxim, "One who comes into equity must come with clean hands." 13 Witkin Summ. Cal. Law Equity § 9. The principle serves to close "the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). "Thus while equity does not demand that its suitors shall have led blameless lives . . . as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." Id. at 814-15 (internal quotation marks and citations omitted).

In its unclean hands defense, Marin incorporates by reference the allegations that it made in support of its estoppel defense. Amended Answer ¶ 29. It further alleges that "Diamond State's unreasonable and bad faith refusal to defend Defendant" and its "misrepresentations of the coverage provided in its policy and/or its inadequate and incomplete investigation of the Defendant's claims, and/or its subsequent bad faith denial of a defense to the Ide claim, constitute inequitable conduct." Id. at ¶¶ 30-31.

Diamond again argues that Marin has not sufficiently alleged what its purported misrepresentations were. Marin responds that it satisfied Rule 9(b) by incorporating its estoppel allegations by reference. However, the estoppel defense contained only conclusory allegations about misrepresentations that did not satisfy the requirements of Rule 9(b); thus, the allegations made in that defense also cannot support a finding that the

34

United States District Court
For the Northern District of California

1  misrepresentations were properly plead in this affirmative

2  defense.

3      Diamond also contends that Marin's other references to an

4  "inadequate and incomplete investigation" of the claim and "bad

5  faith denial" thereof are inadequately plead because they are

6  devoid of any factual content that would, for example, explain how

7  the investigation was inadequate or how the denial was in bad

8  faith.  Marin responds that the plausibility standard requires

9  only "sufficient factual content to provide notice of the claim"

10 and that its allegations do so.  Opp. at 5.  However, as Diamond

11 points out, Marin provides insufficient factual content in support

12 of these allegations and alleges only that "Diamond State either

13 failed to conduct a full investigation into the Ide Action and the

14 conditions for coverage under the Policy or it conducted an

15 investigation and knew it owed Defendant a defense under the

16 Policy" and denied the claim in bad faith.  Amended Answer ¶ 24.

17 Marin argues that this is sufficient because it provides Diamond

18 with notice that it "will need to review the adequacy and

19 completeness of its investigation."  Opp. at 5.  Notably, the

20 allegation does not provide even this notice, as it alternatively

21 argues that a complete investigation was done.  Further, as

22 explained above, fair notice requires more than simply pointing to

23 the general subject matter of the defense.  Instead, fair notice

24 requires "sufficient factual matter, accepted as true," beyond

25 simply conclusory statements, to state the elements of a defense.

26     Accordingly, the Court grants Diamond's motion to strike

27 Marin's unclean hands defense.

28

                                    35

C. Laches

"The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." Pacific Hills Homeowners Assn. v. Prun, 160 Cal. App. 4th 1557, 1564-1565 (2008) (internal quotation marks and citations omitted). The parties dispute whether Marin alleges sufficiently unreasonable delay or prejudice.

As to delay, Marin alleges that it tendered the defense of the Ide action to Diamond in 2005 when that suit was brought and gave Diamond prompt notice of the ATB and enforcement actions, and that Diamond unreasonably delayed in making a determination of no coverage and bringing this action for declaratory relief. Amended Answer ¶¶ 15, 36. In the motion to strike, Diamond did not attack the sufficiency of Marin's allegations of unreasonable delay. In its reply, Diamond argues for the first time that it brought this action before Marin settled the enforcement action and that Marin knew its position as early as 2005. "The district court need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007); see also United States v. Anderson, 472 F.3d 662, 668 (9th Cir. 2006) ("Issues raised for the first time in an appellant's reply brief are generally deemed waived."). Further, that this case was brought before a settlement was reached in the enforcement action or that Marin knew of Diamond's position does not necessarily mean that Diamond did not delay unreasonably in bringing this suit.

Marin further alleges that "Diamond State's delay in bringing this action caused unreasonable prejudice and damage to Defendant

including, but not limited to, attorneys' fees, settlement amounts, and other related costs associated with the ATB settlement that Defendant would have avoided had Diamond State brought this action in a timely manner." Amended Answer ¶ 37. Diamond argues that this allegation does not meet the plausibility standard because, even if Diamond had disclaimed or brought this suit earlier, Marin would still have had to incur these expenses. Marin responds, "While it is possible that Marin may have incurred some of these expenses if Diamond had brought this action sooner, it is not implausible that Marin would have spent less time and money on attorney's fees and related costs analyzing and addressing coverage issues during those actions if Diamond had acted sooner." Opp. at 6. The Court cannot conclude as a matter of law that Marin did not incur any such additional costs that it could have avoided had Diamond brought this action sooner.

Accordingly, Diamond's motion to strike Marin's laches affirmative defense is DENIED.

CONCLUSION

For the reasons set forth above, the Court GRANTS Diamond's motion to dismiss Marin's 2ACC (Docket No. 51).   The Court also GRANTS IN PART and DENIES IN PART Diamond's motion to strike Marin's amended affirmative defenses (Docket No. 39).   Because the Court has previously granted Marin leave to amend to remedy the deficiencies in its counterclaims and affirmative defenses and it has been unable to do so, the Court dismisses the counterclaims and strikes the estoppel and unclean hands affirmative defenses without granting Marin leave to amend.

IT IS SO ORDERED.

Dated: 12/21/2012

CLAUDIA WILKEN
United States District Judge